**NATIONAL RISK RETENTION ASSOCIATION, et al.**

v.

**James H. "Jim" BROWN, in his Capacity as Commissioner of Insurance of the State of Louisiana.**

Civil Action No. 95–1026–A.

United States District Court, M.D. Louisiana.

June 3, 1996.

Donald T.W. Phelps, Adams & Reese, Baton Rouge, Louisiana, for Plaintiffs National Risk Retention Association, Association of Trial Lawyers Assurance, Mutual Risk Retention Group, Non–Profits Mutual Risk Retention Group, Inc. and American Association of Orthodontists Insurance Co.

Julie Z. Fusilier, Baton Rouge, Louisiana, Christopher Lee Whittington, Greenwald & Whittington, Baton Rouge, Louisiana, Claire I. Lemoine, State of Louisiana, Department of Insurance, Baton Rouge, Louisiana, for Defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on cross motions for summary judgment. Each side has filed a response to the other's motion for summary judgment. Oral argument is not necessary. Jurisdiction is based on 28 U.S.C. § 1331.

Plaintiffs filed a complaint with this court seeking a declaratory judgment and injunctive relief. Plaintiffs claim that defendant is enforcing certain provisions of Louisiana's insurance code [1] which have been preempted by federal law.

Defendant moves for summary judgment, arguing that as a matter of law, the challenged provisions of Louisiana law are not preempted by federal law. Defendant also asks the court to find that as a matter of law, defendant has no authority regarding plaintiff, American Association of Orthodontists Insurance Company's (AAOIC) participation in Louisiana's Patient's Compensation Fund.

Plaintiffs move for summary judgment, arguing that the provisions of Louisiana law at issue are preempted by federal law. Neither side disputes the factual allegations of the other nor claims that any genuine issues of material fact are in dispute.

## THE UNDISPUTED FACTS

Plaintiffs are the National Risk Retention Association (NRRA), American Trial Lawyers Assurance, A Mutual Risk Retention Group (ATLA Mutual), Non–Profits Mutual Risk Retention Group, Inc. (Non–Profits), and American Association of Orthodontists Insurance Company (AAOIC). NRRA is a national trade association representing risk retention groups. ATLA Mutual, Non–Profits, and AAOIC are risk retention groups as defined by the Liability Risk Retention Act of 1986 (LRRA). [2] ATLA Mutual, Non–Profits, and AAOIC were all chartered or incorporated in states other than Louisiana, and all provide or seek to provide insurance coverage within Louisiana. Defendant, Brown, is the Commissioner of Insurance for the State of Louisiana.

Because AAOIC has not fully complied with the Louisiana application process for risk retention groups chartered in other states who want to do business in Louisiana as enforced by the defendant under the authority granted to him by Louisiana's insurance code, defendant will not grant AAOIC a certificate of registration so that it can conduct business as a risk retention group in Louisiana. The NRRA, ATLA Mutual, Non–Profits, and AAOIC claim that defendant is

---

**1.** Title 22 of the Louisiana Revised Statutes.

**2.** 15 U.S.C. §§ 3901–3906.

enforcing provisions of Louisiana's Insurance Code which have been preempted by federal law. Plaintiffs claim that if defendant is not enjoined from enforcing these laws and regulations, risk-retention groups which have been chartered in other states will not be able to do business in Louisiana because of the financial burden imposed by the state.

## DISCUSSION

### Summary Judgment

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.[3] Neither party contends that material facts are in dispute. The only disputed questions are questions of law.

### Preemption

The Supremacy Clause, Article VI, Clause 2 of the Constitution, provides that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Federal preemption of state law may arise explicitly from a statute's language or implicitly from its structure and purpose. Intent to preempt does not have to be inferred from the substantive portions of a statute where Congress has included an express preemption section providing a reliable indicium of congressional intent. The alleged preemption in this case is express.

### Risk Retention Groups

In 1981, Congress passed the Product Liability Risk Retention Act of 1981 (PLRRA),[4] authorizing the creation of risk-retention groups, which were defined as interstate, industry wide insurance groups insuring their members against product liability and completed operations claims.[5] Congress created this new type of self-insurance because of a concern over the availability of affordable product liability insurance.[6]

■ Rather than creating a federal regulatory scheme for risk retention groups, the act provided that a risk retention group which had been approved by the insurance authority of any state could act as a risk retention group nationwide.[7] Once a risk retention group is approved by a particular state that state's minimum capitalization requirements and other insurance regulation measures are binding on the risk retention group on a national basis, because of the presumption that if a risk retention group has sufficient financial strength to support risks assumed in one state, it has sufficient strength to underwrite risks nationwide.[8] In order to give effect to this scheme and because of the recognition that risk retention groups are in the business of selling insurance to group members rather than the general public, the Act expressly preempted regulation of risk-retention groups by any state other than the one which chartered the group.[9]

The Congress amended the PLRRA by the Liability Risk Retention Act of 1986 (LRRA).[10] The LRRA amended the PLRRA to expand the scope of coverage which could be provided by risk retention groups to include all types of liability coverage.[11] Under the LRRA, risk retention groups are still generally exempt from regulation by non chartering states. Section 3902(a) of the LRRA provides that:

> [A] risk retention group is exempt from any State law, rule, regulation, or order to

**3.** Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**4.** 15 U.S.C. §§ 3901–3906.

**5.** 15 U.S.C. § 3901.

**6.** *Mears Transp. Group v. State,* 34 F.3d 1013, 1016 (11th Cir.1994), cert. den. —— U.S. ——, 115 S.Ct. 1960, 131 L.Ed.2d 852 (1995).

**7.** *Home Warranty Corp. v. Caldwell,* 777 F.2d 1455, 1472 (11th Cir.1985), cert. den. 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 118 (1986).

**8.** *Home Warranty Corp.,* 777 F.2d at 1472.

**9.** 15 U.S.C. § 3902(a)(*l*); *Home Warranty Corp.,* 777 F.2d at 1473.

**10.** 15 U.S.C. §§ 3901–3906.

**11.** *Mears Transp. Group v. State,* 34 F.3d at 1017.

the extent that such law, rule, regulation, or order would—

(1) ... regulate, directly or indirectly, the operation of a risk retention group.[12]

(4) otherwise discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations.[13]

However, since risk retention groups are no longer restricted to narrow groups of coverages, the Congress gave non chartering state insurance commissioners more authority over the regulation of risk-retention groups in order to preserve some of the traditional role states play in regulating insurance and protecting the public.[14] The Congress formulated exceptions to the exemption from state law created by § 3902(a)(1) allowing regulation by non chartering states to the degree that:

[A]ny State may require such a (risk retention) group to—

(D) register with and designate the State insurance commissioner as its agent solely for the purpose of receiving service of legal documents or process;

(E) submit to an examination by the State insurance commissioner in any State in which the group is doing business to determine the group's financial condition, if—

(i) the commissioner of the jurisdiction in which the group is chartered has not begun or has refused to initiate an examination of the group; and

(ii) any such examination shall be coordinated to avoid unjustified duplication and unjustified repetition.

(F) comply with a lawful order issued—

(i) in a delinquency proceeding commenced by the State insurance commissioner if there has been a finding of financial impairment under subparagraph (E); ...

(H) comply with an injunction issued by a court of competent jurisdiction, upon a petition by the State insurance commissioner alleging that the group is in hazardous financial condition or is financially impaired.[15]

Risk retention groups wishing to operate in a state other than the one in which they were chartered are required to submit financial documents to the insurance commissioners of those states and the insurance commissioners can scrutinize the documents to ascertain the financial responsibility of the risk-retention group. Section 3902(d) says:

Each risk retention group shall submit—

(1) to the insurance commissioner of the State in which it is chartered—

(A) before it may offer insurance in any State, a plan of operation or a feasibility study which includes the coverages, deductibles, coverage limits, rates, and rating classification systems for each line of insurance the group intends to offer; and

(B) revisions of such plan or study if the group intends to offer any additional lines of liability insurance;

(2) to the insurance commissioner of each State in which it intends to do business, before it may offer insurance in such State—

(A) a copy of such plan or study (which shall include the name of the State in which it is chartered and its principal place of business); and

(B) a copy of any revisions to such plan or study, ... and

(3) to the insurance commissioner of each State in which it is doing business, a copy of the group's annual financial statement submitted to the State in which the group is chartered as an insurance company, which statement shall be certified by an independent public accountant and contain a statement of

---

**12.** 15 U.S.C. § 3902(a)(1).

**13.** 15 U.S.C. § 3902(a)(4).

**14.** *Mears Transp. Group v. State,* 34 F.3d at 1017.

**15.** 15 U.S.C. § 3902(a)(1).

opinion on loss and loss adjustment expense reserves....[16]

Lastly, §§ 3902(f) and 3905(d) clarified the residual authority of non chartering states under the LRRA.

Section 3902(f) says:

> Subject to the provisions of subsection (a)(1)(G) of this section (relating to injunctions) and paragraph (2), nothing in this chapter shall be construed to affect the authority of any state to make use of any of its powers to enforce the laws of such State with respect to which a risk retention group is not exempt under this chapter.[17]

Section 3905(d) says:

> Subject to the provisions of section 3902(a)(4) of this title relating to discrimination, nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the state has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities....[18]

■ The intent of these amendments was to create a scheme which exempts risk-retention groups from regulation by non chartering states in which they do business, but which also gives the insurance commissioners in those states certain important rights.[19] Thus, while the insurance commissioner cannot discriminate against or regulate risk-retention groups chartered in another state, he is entitled to act to protect the citizens of his state where the financial condition of a particular risk-retention group requires it.

**The Challenged State Laws**

■ Because of the exemption from state laws provided by the LRRA, plaintiffs challenge the legality of §§ 2074A and 2074.1 of the Louisiana Insurance Code.[20] Section 2074A says:

> Risk retention groups chartered in states other than Louisiana and seeking to do business as a risk retention group in this state shall observe and abide by the laws of this state governing the formation and operation of a risk retention group and the provisions of the federal Risk Retention Amendments of 1986, as amended. However, if a risk retention group fails to qualify under the provisions of the federal Risk Retention Amendments of 1986, the commissioner may apply any state law that may be preempted by the federal Risk Retention Amendments of 1986, as amended.[21]

Plaintiffs claim that this section of the insurance code exceeds the permissible scope of state law under the LRRA because it requires a risk retention group chartered in another state to observe and abide by all of Louisiana's laws which govern the formation and operation of risk-retention groups in Louisiana. The court construes Section 2074A as granting to the Louisiana Commissioner all authority granted to the states by the federal statute and no more. The court finds that when § 2074A is read so as to give it maximum effect, it is not preempted by the LRRA because it requires that a risk-retention group wishing to do business in Louisiana follow the requirements of both the LRRA and Louisiana law. Since the LRRA expressly preempts some of Louisiana's requirements for nonresident risk-retention groups, it is implicit in § 2074A that preempted Louisiana law regarding the formation and operation of risk retention groups need not be followed.

■ Plaintiffs challenge § 2074.1 of the insurance code,[22] which the legislature added in 1995. That section requires that non domiciliary risk retention groups have $5,000,-

**16.** 15 U.S.C. § 3902(d).

**17.** 15 U.S.C. § 3902(f).

**18.** 15 U.S.C. § 3905(d).

**19.** *State of Fla., Dept. of Ins. v. National Amusement Purchasing Group, Inc.*, 905 F.2d 361, 363–364 (11th Cir.1990).

**20.** La.R.S. 22:2074A and 22:2074.1

**21.** La.R.S. 22:2074A.

**22.** La.R.S. 22:2074.1

000 in capital and surplus, post funds or a bond of $100,000 with the commissioner of insurance, and submit the group's plan of operation to the commissioner annually with an examination fee of $1,000. Plaintiffs argue that this is clearly an attempt to regulate non domiciliary risk-retention groups by Louisiana, and that risk retention groups chartered in other states are exempt from this law under 15 U.S.C. § 3902(a)(1).

■ Defendant argues that La.R.S. 22:2074.1 is saved by § 3905(d) of the LRRA which limits it to the extent that it should not interfere with the ability of the states to specify acceptable means of demonstrating financial responsibility where such a demonstration is required by the state. However, when read in context with the rest of the LRRA, it is clear that this does not apply to groups wishing to act as risk retention groups. Rather, it applies to specified activities for which a state can and does demand a showing of financial responsibility. For example, Louisiana requires underground storage tank owners to show that they are financially responsible in order to obtain a license to do business in that state.[23] Section 3905(d) is properly applied in that situation to limit the reach of the LRRA to prohibit the state from discriminating against the prospective licensee if it offers insurance coverage from a risk-retention group as its proof of financial responsibility.[24] To allow a state to require a risk-retention group which has been chartered in another state to comply with a second state's financial responsibility requirements before it can do business in the second state would frustrate the goals of the federal Act and would allow the second state to avoid the federal exemption from state regulation carefully set out in § 3902(a)(1). Thus, as applied to risk retention groups chartered in another state, the requirements for minimum capitalization or for posting of a bond or funds specified by § 2704.1 of Louisiana's insurance code are preempted by the LRRA.

The requirement in § 2074.1, that the risk-retention group submit its plan of operation annually with a fee of one-thousand dollars to cover the cost of examination is preempted by § 3902(d)(2) of the LRRA which requires submission of the group's plan of operation to the state's insurance commissioner only before it is licensed or registered in that state or when any revisions to the plan or study are made.

Section 3902(f)(1) does not save La.R.S. 22:2074.1 because of the last clause or § 3902(f)(1) which limits the reserved powers of the non chartering states to those powers from "which a risk retention group is not exempt under this chapter." Section 3902(a)(1) exempts risk retention groups from traditional insurance rules regulating capitalization requirements and bond posting requirements, like those embodied in La.R.S. 22:2074.1, thus those powers were not reserved to the states by the Congress. La. R.S. 22:2071.1 is preempted by the LRRA.

Lastly, the plaintiffs challenge the "Application to Act as Risk Retention Group in the State of Louisiana" which the defendant requires each non domiciliary risk retention group to complete. As a part of this application, the applicant must submit a fee of $600, and $2 per page for policy form review. The applicant must submit copies of its articles of incorporation and bylaws, biographical affidavits and fingerprint cards for each officer and director, a certificate of compliance from its domiciliary state, a domiciliary state certificate of authority, and duplicate copies of all policy and application forms intended for use in Louisiana. Each applicant must reply to a set of interrogatories and have an official of the group's domiciliary state complete a domiciliary state questionnaire and submit it within 90 days of filing the application. If the Department of Insurance approves the application, the risk retention group will be authorized to operate in the state and be granted a certificate of registration.[25] Plaintiffs argue that the requirements for this application are clearly beyond the scope of

---

23. La.R.S. 30:2195.9.

24. *Mears Transp. Group v. State,* 34 F.3d at 1018.

25. At the time plaintiffs filed this action, the applications could only be filed between March 1 and September 30 of each year. Defendant has since rescinded this policy.

the authority reserved for the states by the LRRA.

Defendant responds that this is simply another method by which the LRRA permits the state to require risk retention groups to prove that they are financially suitable to provide liability insurance in Louisiana.

The burden imposed by the application process for a non resident risk-retention group is broader than is allowed by the LRRA. Section 3902(d) sets out the documents which are to be submitted to the insurance commissioner of a state in which it intends to do business but is not chartered. They are: a copy of the group's plan of operation or feasibility study and any revisions to that plan and an annual financial statement. Implicitly, a second state's insurance commissioner may also require such information as is necessary to require a group to comply with any of the permissible activities under 3902(a)(1)(A)–($l$). However, risk retention groups are exempted from any further requirements under § 3902(a)(1).

## Patient's Compensation Fund

AAOIC apparently seeks to participate in Louisiana's Patient's Compensation Fund. Since AAOIC has not been registered in Louisiana as a risk-retention group, it has not been able to participate in that fund. In light of the court's ruling, any ruling specifically regarding the Patient's Compensation Fund would be premature at this time.

### CONCLUSION

Plaintiffs have shown that there are no genuine issues of material fact and that as a matter of law, the provisions of La.R.S. 22:2074.1 are preempted by the LRRA. Plaintiffs have also shown that the application requirements for risk-retention groups chartered in other states are more expansive than is permitted under the LRRA. Defendants have shown that the provisions of La. R.S. 22:2074A have not been preempted by the LRRA. Therefore, plaintiffs' motion for summary judgment is hereby GRANTED in part and DENIED in part and defendant's motion for summary judgment is hereby GRANTED in part and DENIED in part.

La.R.S. 22:2074.1 is hereby declared null and void as its provisions are in contravention of the Liability Risk Retention Act, 15 U.S.C. § 3901 et seq. Defendant, his successors, agents, servants, employees, attorneys, and all persons in active concert and participation with him will be enjoined from enforcing La.R.S. 22:2074.1 against plaintiffs and other risk-retention groups chartered in other states. Defendant and his successors, agents, servants, employees, attorneys will further be enjoined from requiring plaintiffs and other risk retention groups chartered in other states from abiding by or complying with any licencing requirements beyond those specifically required by the Liability Risk Retention Act.