McDonald, J.
 

 | sThe appeal before us is from a grant of summary judgment in favor of plaintiffs, Walter and Priscilla Shear. There are no facts in dispute that are material to this appeal. The issue before us is one of law, simply stated as, whether an uninsured/un-derinsured motorist rejection form is valid.
 

 FACTS
 

 The suit arises out of an automobile accident that occurred on September 14, 2007, when a vehicle driven by Walter Shear was struck by a vehicle driven by David L. Champagne. At the time of the accident, Shear was an employee of Cajun Constructors, Inc., and was driving a company vehicle headed north on Louisiana Highway 1. The vehicle was insured under a business automobile policy issued to Cajun by American Contractors Insurance Company Risk Retention Group, (ACIC). ACIC is a risk retention group formed under the authority of the Liability Risk Retention Act of 1986 (LRRA), 15 U.S.C. § 3901, et seq. chartered in Texas, whose members/insureds are construction contractors. Cajun has been a member of ACIC since July 1, 2005. The policy of business automobile liability insurance coverage issued to Cajun includes a UM selection form rejecting UM coverage. The form is valid to reject UM coverage under Texas law, but does not conform to the requirements of Louisiana law.
 

 A petition for damages incurred by plaintiffs as a result of the automobile accident was filed on March 14, 2008, naming as defendants, David L. Champagne and the insurer of his vehicle, State Farm (Mutual Automobile) Insurance Company, Wayne N. Bruce and his employer, Offshore Marine Contractors, Inc., American Contractors Insurance Company, and State Farm Mutual Automobile Insurance Company as the insurer of Walter and Priscilla Shear, whose policy includes uninsured/underinsured motorist coverage. The petition alleged that David L. Champagne was underinsured for the damages sustained by the plaintiffs.
 

 |4Plaintiffs filed a motion for summary judgment in May 2008, asking the court to find that the Business Auto Policy issued by ACIC to Cajun provides uninsured/un-derinsured coverage in favor of Walter Shear. A cross-motion for summary judgment was filed in June 2008, alleging that ACIC was entitled to judgment as a matter of law and seeking to have the claims of the plaintiffs dismissed with prejudice. After hearing, the trial court granted the motion for summary judgment in favor of the plaintiffs and denied ACIC’s motion for summary judgment. ACIC appealed, asserting the trial court erred in those decisions.
 

 DISCUSSION
 

 Summary judgments are reviewed on appeal
 
 de novo.
 
 An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law.
 
 Smith v. Our Lady of the Lake Hospital, Inc.,
 
 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. There are no factual issues in dispute in this appeal. Cajun executed a selection form that, under Texas law, validly waived uninsured/underinsured motorist coverage on the automobile liability policy at issue. The question is whether the form executed
 
 *944
 
 by Cajun to waive UM coverage was effective to waive that coverage in the subject automobile accident because the form was undisputedly not effective to waive UM coverage under Louisiana law.
 

 ACIC asserts that the Supremacy Clause of the United States Constitution, providing that “the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding” requires that the waiver executed by Cajun Contractors is a valid rejection of UM coverage. ACIC argues strenuously that Louisiana’s laws regarding uninsured/underinsured motorist coverage are not applicable in this case ^because the federal statute authorizing the risk retention group preempts state law, except as specifically exempted by the statute.
 

 A consideration of preemption in this case is distinguishable from the issue as addressed in most Supremacy Clause jurisprudence in that we are not determining whether a federal law preempts a state law on the same issue. Rather we are determining whether a federal law operates to require that one state’s law (Texas) is controlling over another state’s law (Louisiana). Nevertheless, many of the principles on which preemption determinations are made are important considerations. Specifically, we are mindful of some general principles reiterated by the United States Supreme Court in
 
 New York State Conference of Blue Cross & Blue Shield Plans, v. Travelers Insurance Company,
 
 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The Supreme Court reminded us that “despite the variety of these opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law.... [I]n cases ... where federal law is said to bar state action in fields of traditional state regulation, we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.” 514 U.S. at 654-55, 115 S.Ct. at 1676. (Citations omitted). Insurance is an area in which the “historic police powers of the States” have operated most vigilantly to protect and regulate competing state interests. Therefore, we carefully consider the background and purpose of Congress in enacting the subject legislation.
 

 The LRRA was originally passed in response to claims by business owners of a crisis in the ability to purchase product liability insurance. After four years of study, Congress enacted legislation in 1981, 15 U.S.C. §§ 3901-3904 (1982), to reduce the cost and increase the availability of product liability insurance. In | (^particular, the 1981 Act enabled insureds to purchase product liability insurance on a group basis through purchasing groups or to self-insure through insurance cooperatives called risk retention groups. In response to complaints from municipalities, professionals, and businesses that all kind of liability insurance premiums were skyrocketing and that coverage was frequently no longer available at any price, Congress amended the Act in 1986 so that it applied to all commercial liability insurance. See
 
 Insurance Co. of the State of Pennsylvania v. Corcoran,
 
 850 F.2d 88, 89-90 (2d Cir.1988). Rather than creating a federal regulatory scheme for risk retention groups, the act provided that a risk retention group that had been approved by the insurance authority of any state could act as a risk retention group nationwide.
 
 National Risk Retention Ass’n. v. Brown,
 
 927 F.Supp. 195, 197 (M.D.La.1996),
 
 af
 
 
 *945
 

 firmed,
 
 114 F.3d 1183 (5th Cir.1997) (table).
 

 The federal Act preempts “any State law, rule, regulation, or order to the extent that such, law, rule, regulation, or order would make unlawful, or regulate, directly or indirectly, the operation of a risk retention group....” 15 U.S.C. § 3902(a)(1). Primary regulatory authority and enforcement power over risk retention groups is left to domiciliary, or chartering, states. Only the chartering jurisdiction may directly regulate the formation and everyday operations of a risk retention group.
 
 National Home Insurance Company v. State Corporation Commission of the Commonwealth of Virginia,
 
 838 F.Supp. 1104, 1110 (E.D.VA.1993). Non-domieiliary states have secondary regulatory authority over risk retention groups.
 
 Id.
 
 The 1986 Liability Risk Retention Act amendments significantly increased the regulatory authority of non-domiciliary states. “The 1986 ... amendments went through several versions, each giving increasingly broad regulatory powers to nonchartering states.”
 
 Id.
 
 at 1117
 

 17ACIC maintains that a risk retention group is subject to the law of the chartering state only, in this case, Texas, unless an exception to the exemption from state law is expressly provided in 15 U.S.C. § 3902. ACIC points out that none of the exceptions to exemption from state law deal with uninsured motorist coverage.
 

 Section 3902, entitled “Risk retention groups,” provides, in pertinent part:
 

 (a) Exemptions from State laws, rules, regulations, or orders
 

 Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—
 

 (1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation and operation of such a group and any State may require such a group to—
 

 (A) comply with the unfair claim settlement practices law of the State;
 

 (B) pay, on a nondiscriminatory basis, applicable premium and other taxes which are levied on admitted insurers and surplus lines insurers, brokers, or policyholders under the laws of the State;
 

 (C) participate, on a nondiscriminatory basis, in any mechanism established or authorized under the law of the State for the equitable apportionment among insurers of liability insurance losses and expenses incurred on policies written through such mechanism;
 

 (D) register with and designate the State insurance commissioner as its agent solely for the purpose of receiving service of legal documents or process;
 

 (E) submit to an examination by the State insurance commissioners in any State in which the group is doing business to determine the group’s financial condition, if—
 

 (i) the commissioner of the jurisdiction in which the group is chartered has not begun or has refused to initiate an examination of the group; and
 

 (ii) any such examination shall be coordinated to avoid unjustified duplication and unjustified repetition; |S(F) comply with a lawful order issued—
 

 (i) in a delinquency proceeding commenced by the State insurance commissioner if there has been a
 
 *946
 
 finding of financial impairment under subparagraph (E); or
 

 (ii) in a voluntary dissolution proceeding;
 

 (G) comply with any State law regarding deceptive, false, or fraudulent acts or practices, except that if the State seeks an injunction regarding the conduct described in this subparagraph, such injunction must be obtained from a court of competent jurisdiction;
 

 (H) comply with an injunction issued by a court of competent jurisdiction, upon a petition by the State insurance commissioner alleging that the group is in hazardous financial condition or is financially impaired; and
 

 (I) provide the following notice, in 10-point type, in any insurance policy issued by such group:
 

 NOTICE
 

 “This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your State. State insurance insolvency guaranty funds are not available for your risk retention group.”
 

 (2) require or permit a risk retention group to participate in any insurance insolvency guaranty association to which an insurer licensed in the State is required to belong;
 

 (3) require any insurance policy issued to a risk retention group or any member of the group to be countersigned by an insurance agent or broker residing in that State; or
 

 (4) otherwise discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations.
 

 Plaintiffs
 
 [1]
 
 rely on Section 3905 of the statute, which reads:
 

 (a) No exemption from State motor vehicle no-fault and motor vehicle financial responsibility laws
 

 Nothing in this chapter shall be construed to exempt a risk retention group or purchasing group authorized under this chapter from the policy form or coverage requirements of any State motor vehicle no-fault or motor vehicle financial responsibility law.
 

 |9This section was added to the statute in the 1986 amendments.
 

 Plaintiffs argue that 15 U.S.C. § 3905 is an express rejection of federal preemption of state laws that regulate policy form or coverage requirements of automobile liability policies. It is ACIC’s position that the “motor vehicle financial responsibility law” referred to in § 3905 is found in La. R.S. 32:861 et seq, and does not apply to laws dealing with uninsured/underinsured motorist coverage, which is found in the Insurance Code, La. R.S. 22:680 et seq.
 

 We do not believe “motor vehicle financial responsibility law” in 15 U.S.C. § 3905 must be read so narrowly, and confined to La. R.S. 32:861 et seq. In enacting 15 U.S.C. § 3905, Congress was attempting to clarify the federal statute as it relates to state law dealing with automobile liability insurance, an area that has traditionally and consistently been controlled by state law, and increase the power of insurance commissioners in non-chartering states. We find that “motor vehicle financial responsibility law” refers to the
 
 *947
 
 laws in the area of motor vehicle responsibility as enacted by each individual state. We note that the Texas law corresponding to Louisiana’s “motor vehicle financial responsibility law” is found in the Texas Transportation Code, Chapter 601, Texas Motor Vehicle Safety Responsibility Act. The law governing the issuance of uninsured/underinsured motorist insurance coverage is found in the Texas Insurance Code, Title 10, articles 1952-101. Where the law is found is not the issue, if the purpose is part of a state’s regulatory scheme of automobile liability responsibility then the state’s law will control.
 

 In addition to Congress’s express disavowal of LRRA’s preemption of state motor vehicle financial responsibility law, it recognizes the efficacy of each state’s policy form requirements. The Louisiana Supreme Court reviewed the history and purpose of uninsured/underinsured motorist insurance coverage in
 
 Duncan v. U.S.A.A. Ins. Co.,
 
 2006-363 (La.11/29/06), 950 So.2d 544, noting that in 1997, the Legislature amended La. R.S. 22:1406
 
 [2]
 
 , which stated the requirements for the form required for a valid waiver of UM coverage. As amended, the law requires, “Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.” As noted previously, the form utilized to waive UM coverage in this case does not conform to that prescribed by the Louisiana Commissioner of Insurance.
 

 Duncan
 
 further provided:
 

 The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage under La. R.S. 22:1406(D)(l)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection.
 

 Duncan,
 
 2006-363 at p. 5, 950 So.2d at 547.
 

 Because the writing in this case is insufficient to effect a valid rejection of UM coverage, Louisiana law dictates that the policy provide UM coverage.
 

 Although ACIC’s arguments were well-crafted, we find that the law does not require the result for which it argues. We reach this conclusion, not only based on the above discussion, but also from examination of the insurance policy itself, which contains a form that “becomes part of your policy acknowledging your acceptance or rejection of Uninsured/Underinsured Motorist coverage.” The form states:
 

 We are required to offer Uninsured/Underinsured Motorist Coverage on all automobile liability policies. In some states, this coverage is required by law, while in others, you have the option to accept or reject this coverage or parts of this coverage.
 

 11 |If you
 
 do not want
 
 this coverage in
 
 any state
 
 where you have a choice, please indicate your choice by checking the following box. Please note that certain states may require their own signed rejection form in order to make this rejection valid[.] (Emphasis added.)
 

 
 *948
 
 Clearly, Louisiana is a state that requires use of its own form in order to make the rejection valid. From the standpoint of contract law, the parties were on notice that regardless of their intention, the individual states’ law regarding UM coverage would control rather than the law of the chartering state.
 

 After careful
 
 de novo
 
 review of the record and law in this matter, we find that the Louisiana law governing automobile liability insurance for uninsured/underinsured motorist coverage is controlling in this matter. Therefore, the judgment of the district court granting summary judgment in favor of Walter Shear and Priscilla Shear and finding uninsured/underinsured motorist coverage under the American Contractors Insurance Company Risk Retention Group policy issued to Cajun Constructors, Inc. is affirmed.
 

 Costs of this appeal are assessed to appellant, American Contractors Insurance Company Risk Retention Group.
 

 AFFIRMED.
 

 [1]
 

 . The plaintiffs' arguments have been adopted by the insurance companies that are parties to the litigation, who have also offered supplemental arguments.
 

 [2]
 

 . La. R.S. 22:1406 was re-designated as La. R.S. 22:680 by 2003 La. Acts, No. 456, § 3. La. R.S. 22:680 was re-designated as La. R.S. 22:1295 by 2008 La. Acts, No. 415, § 1.