Chris T. DeHART, Plaintiff-Appellant,

v.

**TOWN OF AUSTIN, INDIANA,**
**Defendant-Appellee.**

No. 93-1749.

United States Court of Appeals,
Seventh Circuit.

Argued March 9, 1994.

Decided Oct. 28, 1994.

Joseph L. Payne (argued), Austin, IN, for plaintiff-appellant.

Ralph E. Randall (argued), Hays & Randall, Scottsburg, IN, for defendant-appellee.

Gregory K. Silver, Indianapolis, IN, Laurens H. Silver, Sierra Club Legal Defense Fund, San Francisco, CA, for amicus curiae Animal Legal Defense Fund.

Before PELL, MANION and KANNE, Circuit Judges.

PELL, Circuit Judge.

Chris T. DeHart appeals from the grant of summary judgment in favor of the town of Austin, Indiana, on cross-motions for summary judgment. DeHart is the owner and operator of DeHart's Exotic Animal Location Service in Austin, Indiana. DeHart's business occupies approximately four acres near the north end of Austin and is principally engaged in the buying, breeding, raising, and selling of exotic and wild animals. The Animal Welfare Act, 7 U.S.C. §§ 2131–2157 ("the Animal Welfare Act" or "the Act"), regulates the transportation, purchase, sale, housing, care, handling, and treatment of animals. DeHart is licensed by the United States Department of Agriculture under the Act and the regulations promulgated under its authority as a "Class 'B' Licensee" which applies to a dealer whose business includes the purchase and/or resale of wild or exotic animals. 9 C.F.R. § 1.1.[1]

DeHart also possesses a license as a "Game Breeder" issued by the Indiana Department of Natural Resources. Ind.Code § 14-2-7-8. The license allows DeHart to possess in captivity, and to buy and sell for breeding purposes or for release, game birds, game mammals, or furbearing mammals.[2] Dehart is in compliance with all federal and state laws and regulations concerning the housing, caging, and care of the animals in his possession.

DeHart has been engaged in the sale of wild and exotic animals from his Austin, Indiana, location since January of 1986 and has had wild and exotic animals in Austin since at least 1977. In September of 1991 the town of Austin passed Ordinance No. 1991–02, an Animal Control Ordinance regu-

---

**1.** Exotic animal is defined by the regulation as "any animal not identified in the definition of 'animal' ... that is native to a foreign country or of foreign origin or character, is not native to the United States, or was introduced from abroad. This term specifically includes animals such as, but not limited to, lions, tigers, leopards, elephants, camels, antelope, anteaters, kangaroos, and water buffalo, and species of foreign domestic cattle...."

"Wild animal means any animal which is now or historically has been found in the wild, or in the wild state, within the boundaries of the United States, its territories, or possessions. This term includes, but is not limited to, animals such as: Deer, skunk, opossum, raccoon, mink, armadillo, coyote, squirrel, fox, wolf." 9 C.F.R. § 1.1.

**2.** " 'Furbearing mammal' means beaver, red fox, gray fox, long tailed weasel, mink, muskrat, raccoon, coyote, oppossum, [sic] or skunk." Ind. Code § 14-2-2-1.

lating animals within the town of Austin and providing for the protection of the public's health and safety and for the animals. The Ordinance provides in pertinent part:

It shall be unlawful for any person, partnership or corporation to keep, maintain or have in their possession or under their personal control within the Town of Austin, Scott County, Indiana, any animal of a species defined hereinabove as a wild animal or animal which is capable of inflicting serious physical harm or death to human beings. This section shall not be construed to prohibit the keeping of unprotected reptiles, turtles, insects which are not dangerous, unprotected birds, fish and amphibians.

Austin Ordinance No. 1991–02, Art. II, § 2–1. The Ordinance defines "wild animal" as "live vertebrate animals which are not normally domesticated, mammal animals found in the wild, venomous reptiles, birds of prey, protected species of birds and other dangerous animals." Austin Ordinance No. 1991–02, Art. II, § 1(A).

DeHart filed suit challenging the constitutionality of the Ordinance and seeking a declaratory judgment, an injunction against enforcement of the Ordinance, damages, and attorney fees. On appeal, he assails the grant of summary judgment in favor of the defendant on three grounds: (1) the Ordinance is preempted both by the Animal Welfare Act, 7 U.S.C. § 2131, *et seq.*, and by certain provisions in the Indiana Code (Ind. Code §§ 14–2–1–2 & 36–1–3–8(7)); (2) the Ordinance is an impermissible attempt to regulate interstate commerce in violation of Article I, § 8, cl. 3 of the United States Constitution; and (3) by attempting to prevent DeHart from housing his animals, Austin has deprived him of his property interest in his federal and state licenses without due process in violation of the Fourteenth Amendment. Austin argues that the Ordinance is within the Town's police powers and is not preempted by federal or state statute.

We review the district court's grant of summary judgment *de novo.* Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case the material facts are not in dispute and we need only determine whether Austin is entitled to judgment as a matter of law.

### I.

When the federal government acts within its constitutional authority, it is empowered to preempt state or local laws to the extent it believes such action to be necessary to achieve its purposes. The supremacy clause of the Constitution authorizes this federal action, and the phrase "Laws of the United States" of Article VI, Clause 2 encompasses both federal statutes and federal regulations that are properly adopted in accordance with statutory authorization. *See Louisiana Public Service Comm'n v. F.C.C.*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986). Preemption occurs in three situations. Congress may define expressly to what extent a federal statute preempts a state or local law. *E.g., Morales v. Trans World Airlines, Inc.,* — U.S. —, —, 112 S.Ct. 2031, 2038, 119 L.Ed.2d 157 (1992); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–98, 103 S.Ct. 2890, 2898–99, 77 L.Ed.2d 490 (1983). We may also infer preemption when a pervasive scheme of federal regulation makes it reasonable to conclude that Congress intended exclusive federal regulation of the area. *English v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2279, 110 L.Ed.2d 65 (1990). Finally, where state or local law actually conflicts with federal law, state or local law must give way. *Ridgway v. Ridgway,* 454 U.S. 46, 54–55, 102 S.Ct. 49, 54, 70 L.Ed.2d 39 (1981). Such a conflict arises when "compliance with both federal and state or local regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or when state or local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See generally Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

■ Our ultimate task is to ascertain the intent of Congress, *Shaw,* 463 U.S. at 95, 103 S.Ct. at 2898–99, so preemption analysis begins " 'with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.' " *Morales,* —— U.S. at ——, 112 S.Ct. at 2036 (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 55, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990)). Courts do not lightly attribute to Congress or to a federal agency the intent to preempt state or local laws. Indeed, when regulation is of a field traditionally occupied by the States, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the *clear and manifest* purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (emphasis added). "The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 569, 111 S.Ct. 2456, 2462, 115 L.Ed.2d 504 (1991). The regulation of animals has long been recognized as part of the historic police power of the States. *Nicchia v. New York,* 254 U.S. 228, 230–31, 41 S.Ct. 103, 103–04, 65 L.Ed. 235 (1920); *Sentell v. New Orleans & C.R. Co.,* 166 U.S. 698, 704, 17 S.Ct. 693, 695–96, 41 L.Ed. 1169 (1897).

■ We conclude that DeHart has not shown that any of the above-mentioned methods of preemption apply in this case. To the contrary, it is clear that the Animal Welfare Act does not evince an intent to preempt state or local regulation of animal or public welfare. Indeed, the Animal Welfare Act expressly contemplates state and local regulation of animals. For example, § 2145(b) declares: "The Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this chapter and of any State, local, or municipal legislation or ordinance on the same subject." 7 U.S.C. § 2145(b). In addition, § 2143(a)(8) provides that the statutory authority delegated to the Secretary of Agriculture to "promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors," 7 U.S.C. § 2143(a)(1), "shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary." 7 U.S.C. § 2143(a)(8).

During oral argument counsel for DeHart acknowledged that there can be local regulation for the animals' care, welfare and housing, such as cages and fencing in addition to the federal and state regulation. But, counsel argued that the regulation by Austin is excessive because it amounts to a total prohibition. Even if the Austin Ordinance produces onerous consequences for DeHart's business, preemption is not established. The statute does not contemplate express preemption and none can be inferred. DeHart has not shown that it is physically impossible to comply with both the federal and local regulations.

In summary, the purpose of the Animal Welfare Act is to foster humane treatment and care of animals and to protect the owners of animals from the theft of their animals. 7 U.S.C. § 2131. The purpose of the Ordinance is to "provid[e] for the protection of the public's health and safety and for the animals therein...." Austin Ordinance No. 1991–02, prefatory paragraph. This is an area of regulation within the historic police powers of a municipality. Thus, given the clear expressions of Congressional intent to foster cooperation with state and local governments and the different, albeit overlapping, purposes behind the Animal Welfare Act and the Austin Ordinance, we discern no Congressional intent to ban state or local legislation in the regulation of wild animals. *Cf. Winkler v. Colorado Dept. of Health,* 193 Colo. 170, 175–76, 564 P.2d 107, 111 (1977); *Medlock v. Board of Trustees of Univ. of Mass.,* 31 Mass.App.Ct. 495, 498 n. 3, 580 N.E.2d 387, 389 n. 3; *review denied,* 411 Mass. 1105, 586 N.E.2d 10 (1991).

■ Similarly, DeHart's contention that the laws of Indiana preempt the Ordinance is in error. DeHart asserts, as he did in the district court, that Indiana Code §§ 14–2–1–

2 ³ and 36–1–3–8(a)(7) "provide that. the Indiana Department of Natural Resources ("IDNR") has the sole authority to regulate wild animals and that the Town does not have the power to regulate conduct regulated by the DNR." Appellant's Brief at 9 (emphasis in original). DeHart overstates the breadth of these statutes. Indiana Code § 14–2–1–2 only applies to "the fish and wildlife resources of the state." Animals which are held in captivity under a license or permit are specifically excluded from this classification. *See* Ind.Code § 14–2–1–2. Further, the statute does not purport to vest exclusive control with the IDNR. DeHart's reliance on Indiana Code § 36–1–3–8(a)(7), which provides that a municipality does not have: "[t]he power to regulate conduct that is regulated by a state agency, except as expressly granted by statute," consequently is misplaced because DeHart's animals are not "wildlife resources of the state" subject to IDNR's oversight. Thus, Austin had the power to enact Ordinance No. 1991–02. *See* Ind.Code §§ 36–1–3–2 *et seq.*

## II.

 The Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States...." Art. I, § 8. "Although the [Commerce] Clause thus speaks in terms of powers bestowed upon Congress, the Court long has recognized that it also limits the power of the States to erect barriers against interstate trade." *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). Thus, even in areas where Congress has not exercised its authority, state or local regulations may violate the Commerce Clause either because the regulations discriminate against interstate or foreign commerce, or because they incidentally affect such commerce.

Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citation omitted). The person challenging a statute that regulates evenhandedly bears the burden of showing that the incidental burden on interstate commerce is excessive compared to the local interest. *Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979).

 By contrast, if a statute discriminates against interstate commerce either on its face or in its practical effect, it is subject to the strictest scrutiny, and the burden shifts to the governmental body to prove both the legitimacy of the purported local interest and the lack of alternative means to further the local interest with less impact on interstate commerce. *Wyoming v. Oklahoma*, 502 U.S. 437, ——, 112 S.Ct. 789, 799–801, 117 L.Ed.2d 1 (1992). "Thus, where simple economic protectionism is effected by state legislation, a virtual *per se* rule of invalidity has been erected." *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).

 The Ordinance does not effect "simple protectionism," but regulates evenhandedly by imposing a complete ban on commerce in wild or dangerous animals within the town of Austin without regard to the origin of the animals. Because the Ordi-

---

3. Indiana Code section 14–2–1–2 provides:
 The department of natural resources shall have the authority and responsibility to protect and properly manage the fish and wildlife resources of the state. Any and all wild animals, except those which are legally owned or being held in captivity under a license or permit as required by this article or as otherwise excepted in this article, shall be the property of the people of the state of Indiana and the protection, reproduction, care, management, survival, and regulation of the wild animal population shall be entrusted to the division of fish and wildlife of the department of natural resources.

nance does not discriminate between interstate and intrastate commerce, the controlling question is whether the incidental burden imposed on interstate commerce by the Ordinance is "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142, 90 S.Ct. at 847. We conclude that it is not.

The Ordinance is an exercise of the municipality's traditional police powers for the protection of the health and safety of the public and the regulation of animals. Further, the Ordinance bears a reasonable relation to its declared purpose of protecting the people in the Town of Austin from potentially dangerous animals "capable of inflicting serious physical harm or death to human beings." Ordinance, § 2.1. No evidence was presented by DeHart on summary judgment that created a material issue of fact as to whether this local interest could be advanced through less burdensome alternatives. Thus, DeHart has failed to show that the Ordinance violates the Commerce Clause.

### III.

DeHart argues that the town has taken away both his federal and state licenses in which he claims "constitutionally protectible property interests" of which he was deprived without due process in violation of the Fourteenth Amendment.

The district court concluded that a decision on this issue would be premature because no deprivation had occurred and it was unclear, in upholding the Ordinance, that the permits would be rendered unusable. We agree with the district court. While we express no opinion on whether the permit issued under the Animal Welfare Act or the Indiana Game Breeder's License create a liberty or property interest, DeHart has not persuaded us that we must rule on this issue in the absence of any deprivation. The cases cited by DeHart were decided after a deprivation had occurred.

Pursuant to questioning at oral argument, the panel clarified that this issue is strictly confined to DeHart's permits and does not involve any questions concerning the "taking" of his property or business. We

note that the remedy for excessive regulation is a suit for invalidation or inverse condemnation—a suit that belongs in state court. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195–96, 105 S.Ct. 3108, 3121–22, 87 L.Ed.2d 126 (1985); *see Yee v. Escondido,* —— U.S. ——, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 167 (7th Cir.1994).

AFFIRMED.