**OPHTHALMIC MUTUAL INSURANCE COMPANY, (a Risk Retention Group), Plaintiff–Appellant,**

v.

**Josephine MUSSER, Commissioner of Insurance, State of Wisconsin, and the Wisconsin Patients Compensation Fund, Defendants–Appellees.**

No. 97–1347.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 8, 1997.

Decided May 7, 1998.

**1064**

Brian W. McGrath (argued), Foley & Lardner, Milwaukee, WI, for Plaintiff–Appellant.

Laura Sutherland (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before CUDAHY, COFFEY and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellant Ophthalmic Mutual Insurance Company ("OMIC"), a risk retention group (RRG), brought suit against Josephine Musser, in her capacity as Commissioner of Insurance of the State of Wisconsin, and the Wisconsin Patients Compensation Fund, asking the federal district court to declare that § 655.23, Wis. Stats., was preempted by the federal Liability Risk Retention Act of 1986 ("LRRA"), 15 U.S.C. §§ 3901–3906. The district court granted summary judgment in favor of the defendants. OMIC appeals. We affirm.

## I. BACKGROUND

The Products Liability Risk Retention Act ("PLRRA") was enacted by Congress in 1981 to encourage the formation of risk retention groups, because of the lack of product liability insurance at affordable rates. *National Risk Retention Ass'n v. Brown*, 927 F.Supp. 195, 197 (M.D.La.1996), citing *Mears Transp. Group v. State*, 34 F.3d 1013, 1016 (11th Cir.1994), *cert. denied*, 514 U.S. 1109, 115 S.Ct. 1960, 131 L.Ed.2d 852 (1995). The PLRRA sought to "reduce the problem of the rising cost of product liability insurance by permitting product manufacturers to purchase insurance on a group basis at more favorable rates or to self-insure through insurance cooperatives called risk retention groups." H.R.Rep. No. 190 at 4 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1432. The Act as adopted permitted manufacturers to pool their resources into risk retention groups to provide those members of the group with insurance coverage. The Act preempted certain state laws and regulations that tended to inhibit a nationwide distribution of liability insurance for this type of coverage.

In 1986, Congress enacted the Liability Risk Retention Act ("LRRA") to broaden the PLRRA and allowed professional groups, including health care providers, to form risk retention groups. Under the LRRA, Congress was effectively attempting to preclude most state regulation of risk retention groups. The LRRA provides:

(a) Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would-

(1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group [excepting regulation by the State in which the risk retention group is chartered and certain limited regulation by non-domiciliary states];

. . . .

(4) otherwise discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations.

15 U.S.C. § 3902(a)(1), (4).

For a risk retention group to operate under federal law, the law requires that the group must be domiciled in at least one state and be subject to that state's insurance regulatory laws, including adequate rules and regulations allowing for complete financial examination of all books and records, including but not limited to proof of solvency. 15 U.S.C. § 3901(a)(4)(C). Congress placed primary responsibility for regulating the formation and operation of risk retention groups

on the state in which the risk retention group is chartered.

While the Act precludes most non-domicile regulation of risk retention groups, it allows for a limited number of exceptions to the preemption rule. *See* 15 U.S.C. § 3902(a)(1)(A)-(I). Most significantly, the LRRA excepts from preemption state laws that require adequate proof of financial responsibility for licensees.[1]

As is the norm among states, Wisconsin requires licensee corporations (including health care providers) to offer proof of financial responsibility in order to do business within the state, with health care providers obligated to maintain their first $400,000 of professional liability insurance coverage with a state-admitted insurer.[2] In 1989, the Wisconsin Legislature amended its "financial responsibility" statute to limit the manner in which health care providers are able to establish proof of financial responsibility. The amended law provides:

> Except as provided in par. (d), every health care provider either shall insure and keep insured the health care provider's liability by a policy of health care liability insurance issued by an insurer *authorized to do business in this state* or shall qualify as a self-insurer.

§ 655.23(3)(a), Wis. Stats. (emphasis added).

In response to the new law, the Wisconsin Office of the Commissioner of Insurance ("OCI"), the agency charged with the responsibility of administering the Wisconsin statutes concerning insurance, contacted all Wisconsin health care providers to inform them that any medical malpractice insurance purchased or renewed after July 1, 1990, must be obtained from an insurer licensed in Wisconsin, if it is to satisfy the "financial responsibility" requirement of § 655.23.

OMIC, the plaintiff-appellant, is a risk retention group chartered and licensed under the laws of the State of Vermont to write liability insurance coverage for ophthalmologists on the national level. Although not licensed to sell insurance in the State of Wisconsin, OMIC, prior to the enactment of the § 655.23 amendment, had provided professional liability insurance to numerous ophthalmologists licensed in Wisconsin. As a result of the amendment and the OCI's letter, all ophthalmologists in Wisconsin who had previously been insured by OMIC canceled their policies, resulting in OMIC bringing this suit to challenge § 655.23.

At the trial level, OMIC alleged that § 655.23(3)(a) is unconstitutional because it imposes impermissible regulations on RRGs in violation of § 3902(a)(1) of the LRRA, and it discriminates against RRGs in violation of § 3902(a)(4) of the LRRA.

The trial judge found that § 655.23 neither impermissibly regulates RRGs nor discriminates against them, but, rather, is a proper exercise of state police powers under the § 3905(d) exception, with its underlying goal to make certain that the Wisconsin policy holders are doing business with a financially responsible insurance company. On appeal, OMIC does not renew its argument that § 655.23 discriminates in violation of § 3902(a)(4); rather, OMIC argues that § 655.23 impermissibly regulates RRGs in violation of § 3902(a)(1), or, alternatively, that § 655.23 does not properly fit within the exception contained in § 3905(d). We agree with the finding of the district court and hold that the LRRA does not preempt § 655.23 because § 655.23 fits within the exception contained in § 3905(d).

---

1. 15 U.S.C. § 3905(d) states:
 Subject to the provisions of section 3902(a)(4) of this title relating to discrimination, nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. Such means may include or exclude insurance coverage obtained from an admitted insurance company, an excess lines company, a risk retention group, or any other source regardless of whether coverage is obtained directly from an insurance company or through a broker, agent, purchasing group, or any other person.

2. In addition to this first $400,000 worth of coverage, all health care providers in Wisconsin, including ophthalmologists, are required to participate in the Wisconsin Patients Compensation Fund, which covers those claims that exceed $400,000.

## II. ISSUES

1. Whether § 655.23, Wis. Stats., is a valid and proper "financial responsibility" law such that it fits within 15 U.S.C. § 3905(d), which provides that the Risk Retention Act does not preempt a statute from establishing financial responsibility requirements of state licensees, such as health care professionals.

2. Whether § 655.23, Wis. Stats., which requires health care professionals, such as ophthalmologists, to purchase health care malpractice liability insurance *only* from insurance companies which are licensed by the State of Wisconsin, is preempted by 15 U.S.C. § 3902(a)(1) of the Risk Retention Act.

## III. DISCUSSION

### A. Standard of Review.

■ In this case, the parties have stipulated that there are no material facts and that summary judgment is proper. We review the district court's order granting summary judgment de novo. *Thomas v. Ramos,* 130 F.3d 754, 759 (7th Cir.1997).

### B. General Principles of Preemption.

■ Under its constitutional authority, the federal government is empowered to preempt state or local laws to the extent it believes such action to be necessary. *See DeHart v. Town of Austin, Ind.,* 39 F.3d 718, 721 (7th Cir.1994). This federal action is authorized by the Supremacy Clause of the Constitution, which states that "the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. The phrase "Laws of the United States" of Article VI, Clause 2 includes both federal statutes and federal regulations properly adopted in accordance with statutory authorization. *See, e.g., DeHart,* 39 F.3d at 721.

■ A preemption analysis commences with a determination of the Congressional intent in enacting the legislation. *Id.* at 722. Courts look to the very language used by Congress and assume that the ordinary meaning of the language accurately reflects the legislative purpose. *Id.* Where Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose, preemption is compelled. *See, e.g., Time Warner Cable v. Doyle,* 66 F.3d 867, 875 (7th Cir.1995). However, courts do not lightly attribute to Congress or to a federal agency the intent to preempt state or local laws. *See DeHart,* 39 F.3d at 722. In fact, in fields traditionally occupied by the states, courts start with the presumption that the historic police powers of the states were not to be superseded by federal law unless Congress has enacted legislation enunciating that preemption was the "clear and manifest" purpose of Congress. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Traditional areas occupied by the state include the authority to provide for the public health, safety, and morals. *See DeHart,* 39 F.3d at 722.

### C. The McCarran–Ferguson Act's Effect on Principles of Preemption.

Insurance is one of those areas which Congress has for the most part steered clear of and traditionally left to be controlled by the states. This intent of Congress was made explicit with the McCarran–Ferguson Act. Enacted in 1945, the McCarran–Ferguson Act states:

> Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011. The Act's next section reinforces this policy statement, while making it clear that any preemption of state insurance regulation has to be unambiguously explicit:

> **(a) State regulation.** The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation.of such business.
>
> **(b) Federal regulation.** No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a

fee or tax upon such business, unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012.

 In accordance with the policy directives Congress elucidated in the McCarran–Ferguson Act, if there is a doubt regarding whether Congress intended to preempt a particular state insurance law, there is a presumption against preemption. As we stated in *American Deposit Corp. v. Schacht*, 84 F.3d 834 (7th Cir.1996), "state laws enacted for the purposes of regulating the business of insurance do not yield to conflicting federal statutes unless federal statutes specifically provide otherwise." *Id.* at 837–38, citing *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 507, 113 S.Ct. 2202, 2211, 124 L.Ed.2d 449 (1993). In *American Deposit*, for instance, we held that, under the McCarran–Ferguson Act, the National Bank Act could not be interpreted to impair or supersede sections of the Illinois insurance code governing certificates of authority. *Id.* at 837–38.

### D. The PLRRA and LRRA.

 Congress specifically preempted some state insurance regulation—namely, those state laws regulating RRGs—with the enactment of the PLRRA and the LRRA. This is not in dispute. Congress enacted the PLRRA (and, later, the LRRA) because it felt that the tangle of myriad state regulations choked off RRGs:

> Federal action is necessary because experience has shown that individual state legislation cannot facilitate the formation of self-insurance groups. Individual states can only enact legislation affecting their respective insurance law requirements. The practical effect of these laws is to prevent product sellers in several states from forming such groups.

Pub.L. No. 97–45, 1981 U.S.Code Cong. & Admin. News, at 1434. *See also Mears Transp. Group v. State of Fla.*, 34 F.3d 1013, 1017 (11th Cir.1994) (the purpose of these preemption provisions was to facilitate "the efficient operation of risk retention groups by eliminating the need for compliance with nu-

merous non-chartering state statutes that, in the aggregate, would thwart the interstate operation [of] product liability risk retention groups"), citing H.R.Rep. No. 190, 97th Cong., 1st Sess. 12 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1441.

The particular LRRA provisions meeting the McCarran–Ferguson's requisite that preemption be explicit are found in 15 U.S.C. § 3902(a)(1) and (a)(4). § 3902(a)(1) prevents states from unlawfully regulating RRGs (directly or indirectly); § 3902(a)(4) prevents states from discriminating against RRGs "except as otherwise provided in this section." Because of Congress' intent that RRGs avoid excessive entanglement with state regulations, this preemption is central to effecting the purposes of the LRRA. *See National Home Ins. v. State Corp. Comm'n*, 838 F.Supp. 1104, 1109 (E.D.Va.1993) ("[T]he Act's legislative history ... notes that preemption of state laws that inhibit the formation and continued operation of risk retention groups is 'central' to the Risk Retention Act's objective of facilitating the development of risk retention groups").

### E. The Exception Regarding "Financial Responsibility" Regulation.

 The preemptive effects of the LRRA are not unlimited, however, and in passing the LRRA in 1986 Congress harbored concerns about the fact that the LRRA's amendments to the PLRRA served to greatly increase the scope of preemption; operations of RRGs are no longer to be limited to "narrow groups of coverages," as they were in 1981. To ensure that the 1986 amendments did not drastically alter the states' traditional role in regulating insurance, Congress sought to "augment[ ] the authority of nonchartering states to regulate solvency, trade practices and other matters" and "contemplated that States may enact statutes and issue regulations to protect the public to the extent such action is not exempt by th[e] Act." H.R.Rep. No. 865 at 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5303, 5304, 5315. Congress thus incorporated into the LRRA 15 U.S.C. § 3905(d), a "saving provision,"[3] which carved out an exception to

---

3. H.R. Rep. 99–865 at 38 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5303, 1986 WL 31938. A saving provision (or, saving clause) is an excep-

tion of a special thing out of general things mentioned in a statute. *State ex rel. Crow v. City*

preemption: under the exception, states were not bound by the LRRA when crafting "financial responsibility" statutes, as long as they did not discriminate against RRGs. § 3905(d) states:

> Subject to the provisions of section 3902(a)(4) of this title relating to discrimination, nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. Such means may include or exclude insurance coverage obtained from an admitted insurance company, an excess lines company, a risk retention group, or any other source regardless of whether coverage is obtained directly from an insurance company or through a broker, agent, purchasing group or any other person.

15 U.S.C. § 3905(d). Under this language, a state can require a licensee to demonstrate that he is insured by a state-licensed insurer, even if this means that non-domestic RRGs turn out to be among the pool of non-qualifying insurers. Indeed, legislative history from the day the Senate passed the LRRA reveals that Congress specifically intended to preserve for states the right to exclude non-domestic RRGs on the basis of financial responsibility:

> I am particularly pleased, Mr. President, that language contained in the House bill recognizing the right of a State to require proof of financial responsibility before the undertaking of certain activities and to prescribe the manner for meeting that requirement, is retained in this amendment. As I stated on the floor at the time of the passage of the Senate bill, requirements of financial responsibility are usually the result of a State's concern about third parties who might be injured by the insured's activities. In the State of Washington, for instance, many activities require prior proof of insurance by a carrier admitted to do business in the State. Such laws would continue to be valid notwithstanding the fact that they might preclude participation

in an out-of-State risk retention group for the purpose of meeting the requirement.

132 Cong. Rec. S15446–01 (daily ed. Oct. 6, 1986) (statement of Sen. Gorton).

The language of the Wisconsin statute mirrors the scenario envisioned in the legislative history and thus fits into the preemption exception contained in § 3905(d). § 655.23, Wis. Stats. states:

> (3)(a) [E]very health care provider either shall insure and keep insured the health care provider's liability by a policy of health care liability insurance *issued by an insurer authorized to do business in this state* or shall qualify as a self-insurer.

(Emphasis added). By matching up the exception contained in § 3905(d) with § 655.23, it is clear that § 655.23 squares with the exception:

— § 3905(d) requires that a state statute relate to "proof of financial responsibility as a condition for obtaining a license"; § 655.23 relates to proof of financial responsibility for licensed health care providers.

— § 3905(d) states that this "financial responsibility" proof may *include* insurance coverage obtained from an admitted insurer; the proof required by § 655.23 *includes* insurance coverage obtained from an admitted insurer.

— § 3905(d) states that this "financial responsibility" proof may *exclude* risk retention groups; the proof required by § 655.23 *excludes* non-domestic RRGs, just as it *excludes* all other non-domestic insurers.

Because § 655.23 matches the requisites of § 3905(d) and reflects the very statutory language contained in the legislative history, we hold that § 655.23 clearly fits within the exception contained in § 3905(d).

**F. Preemption of § 655.23.**

OMIC argues that § 655.23 runs afoul of § 3902(a)(1) of the LRRA, which mandates that states may not "make unlawful, or regulate, directly or indirectly, the operation of a risk retention group," "except

*of St. Louis,* 73 S.W. 623, 629, 174 Mo. 125 (1903).

as otherwise provided in this section." We are of the opinion that § 3902(a)(1) does not preempt § 655.23 because, while § 655.23 does indeed regulate RRGs, it does so "as otherwise provided in this section," namely, consonant with § 3905(d). As demonstrated in the legislative history quoted above, the very subject matter and language contained in the Wisconsin statute make it precisely the type of statute that Congress envisioned to be exempt from preemption.

In coming to this conclusion, we agree with the reasoning of our sister circuit in *Mears Transp. Group v. State of Fla.*, 34 F.3d 1013 (11th Cir.1994). In *Mears*, the Eleventh Circuit held constitutional a Florida amended statute entitled "Manner of Proving Financial Responsibility," § 324.031, Fla. Stats. The amendment, enacted in 1992, required operators of for-hire passenger transportation vehicles to maintain primary insurance (the first $30,000) with a member of the Florida Insurance Guaranty Association (FIGA). *Mears*, 34 F.3d at 1015. As a result, this amendment prevented owners and operators of for-hire passenger vehicles from self-insuring the first $30,000 in liabilities, and precluded non-members of FIGA from providing this primary insurance.[4] Finding that "Congress evidenced its intent (via § 3905(d)) to preserve for the states the authority to utilize financial responsibility laws to protect the public," *id.* at 1018, the Eleventh Circuit found that the Florida statute was "precisely the type of state law that Congress expressly excepted from the preemption provisions of the Liability Risk Retention Act." *Id.* at 1016. We are in full agreement with this clear and concise statement of public policy recited herein, and hold that the Wisconsin statute is also the type of state law that Congress intended to be excepted from preemption.

OMIC responds and argues that § 655.23 does not merely constitute a limited exception to the preemptive effects of the LRRA; it creates a stone wall at the Wisconsin border preventing the entire LRRA from entering. After all, OMIC points out, after the date that § 655.23 became operative in Wisconsin, ophthalmologists have had no incentive to purchase OMIC's product. If they decide to purchase insurance from OMIC, they will *still* have to purchase a *duplicate* insurance policy, from a state-licensed insurer, to qualify for a Wisconsin license. No ophthalmologist would pay twice when he need only pay once, and so, the argument goes, § 655.23 effectively *bans* RRGs, contrary to the intent of the LRRA. Certainly, OMIC argues, Congress did not intend for the exception contained in § 3905(d) to obliterate the preemptive effect of the LRRA altogether; the exception should not be allowed to swallow the rule.

We are convinced that OMIC's argument is without merit. It is true that § 655.23 has, for purposes of this appeal, ended OMIC's ability to do business in Wisconsin, and Congress in fact did state that it did not want states to use "financial responsibility" laws to shut out RRGs:

> Some concern has been expressed to the Committee that the authority of States to apply financial responsibility requirements recognized under this Subsection might be misused by a State hostile to risk retention groups. It is suggested that such a State might impose discriminatory requirements, excluding risk retention groups to thwart their operation. Such use of State authority would be contrary to the intent of the Act.

1986 U.S.C.C.A.N. 5303 at 5316.

> While states may impose justified requirements regarding financial responsibility for a license or permit to engage in specified activities, enactment of statutes by States or the application of existing laws which are only intended to prohibit, or which unjustifiably prohibit, the operation of a risk retention group would not be authorized. Such action would be contrary to the plain meaning and intent of this provision.

132 Cong. Rec. S15446–01, 40–1 (1986). However, we are not convinced that § 655.23 runs afoul of Congressional intent, nor do we believe that § 655.23 allows the exception (§ 3905(d)) to swallow the whole (the rest of the LRRA). As far as Congressional intent, the above legislative history indicates that

---

4. RRGs, including the *Mears* plaintiff, could not participate in FIGA, because 15 U.S.C.

§ 3902(a)(2) prevents risk retention groups from participating in state insurance guaranty funds.

what concerned Congress was a state legislature enacting laws *intending to thwart* RRGs. There is no allegation in this case that § 655.23 was enacted to discriminate against RRGs, nor is there any evidence whatsoever in the record that this is so.[5]

Nor do we agree with OMIC's argument that § 655.23 allows "the exception to swallow the whole." § 655.23 does not prevent OMIC from selling RRG coverage in Wisconsin. By that fact alone, the main thrust of the LRRA is satisfied, and it is not obliterated. At the same time, although § 655.23 indisputably harms OMIC's business in Wisconsin, § 655.23 causes this harm under the clear aegis of the exception contained in § 3905(d).

Lastly, OMIC argues that a proper reading of the exception in § 3905(d) reserves for states the ability to exclude a *particular* risk retention group if, for instance, it had financial problems. We agree with the *Mears* court that, because other sections of the Act specifically give states authority to take action against troublesome RRGs, § 3905(d) must mean something different:

> [Interpreting § 3905(d) to refer to individual RRGs] is erroneous because it would render superfluous several provisions of the [Act] that are specifically aimed at preserving state authority to exclude financially impaired risk retention groups. Most notably, subsection 3902(e) and section 3906 specifically authorize a state to obtain injunctive relief to prevent a financially impaired risk retention group from operating in the state. Thus, [such an interpretation] ignore[s] principles of statutory construction and, thereby, misconstrue[s] subsection 3905(d)....

*Mears*, 34 F.3d at 1019.

## IV. CONCLUSION

We hold that the Wisconsin legislature's enactment of § 655.23, Wis. Stats., is in accord with Congressional intent in formulating § 3905(d), the exception to the preemption provisions in the LRRA. Based on the clear

and unambiguous language of the statute, the statute's legislative history, and the long-standing presumption against preemption of insurance statutes, we hold that the LRRA does not preempt § 655.23.

AFFIRMED.

---

**5.** § 3902(a)(4) of the LRRA expressly prohibits states from discriminating against RRGs. While at the lower level OMIC contended that § 655.23 discriminates against RRGs, OMIC has not appealed the district court's determination that § 655.23 does not discriminate against RRGs. In

any event, while § 655.23 most definitely discriminates against *out-of-state* insurers (as Wisconsin has the right to do), and while out-of-state insurers may include RRGs, there is no evidence in the record to indicate that RRGs *as a class* face discrimination under § 655.23.