The Honorable Russ Hunt State Representative P.O. Box 200 Searcy, AR 72145-1200
Dear Representative Hunt:
This is in response to your request for an opinion on the following question:
 Does the Arkansas Game and Fish Commission have the authority to regulate non-native, captive born animals?
RESPONSE
This general question cannot be answered with a conclusive "yes" or "no" because it will depend upon the particular exercise of regulatory authority by the Game and Fish Commission ("Commission").[1] As a general matter, however, it is my opinion that the answer is "yes" as long as the facts indicate that the Commission's action falls within that body's broad constitutional power to protect and conserve the wildlife resources of the State of Arkansas.
Our constitution vests the Commission with the "control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State. . . ." Ark. Const. amend. 35, § 1. Arkansas case law establishes the Commission's extensive authority and discretion in seeking to accomplish its mission under Amendment 35. It was held in State, ex re. Wright v. Casey, 225 Ark. 149, 152,279 S.W.2d 819 (1955) that this constitutional provision gives the Commission "full and complete administrative power and authority to promulgate rules and regulations necessary for the conservation and preservation of all wildlife," provided such rules and regulations are not unreasonable or arbitrary. The court in Arkansas Game and FishCommission v. Stanley, 260 Ark. 176, 538 S.W.2d 533 (1976), quoting from several earlier cases, summarized the Commission's authority as follows:
 We have held that the Commission has a very broad discretion in determining how wildlife shall be conserved. W.R. Wrape Stave Co. v. Arkansas State Game Fish Comm'n, 215 Ark. 229, 219 S.W.2d 948; Hampton v. Arkansas State Game Fish Comm'n, 218 Ark. 757, 238 S.W.2d 950. In Wrape, we said that the Amendment is complete within itself and that it was intended by the Amendment to either provide or leave to the Commission, methods for attaining the ends enumerated. See also, State v. Casey, 225 Ark. 149, 279 S.W.2d 819. . . . In [Farris v. Arkansas Game Fish Comm'n, 228 Ark. 776, 310 S.W.2d 231
(1958)], we said:
 * * * The Commission has a wide discretion within which it may determine what the public interest demands, and what measures are necessary to secure and promote such requirements. The only limitation upon this power to formulate these rules and regulations, which tend to promote the protection and conservation of the wild life resources of the state, and which tend to promote the health, peace, morals, education, good order and welfare of the public is that the rules and regulations must reasonably tend to correct some evil, and promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution. * * * The Commission, as trustee for the people of this state, has the responsibility and is charged with the duty to take whatever steps it deems necessary to promote the interest of the Game and Fish Conservation Program of this state; subject only to constitutional provisions against discrimination, and to any valid exercise of authority under the provisions of the Federal Constitution. * * *
Stanley, 260 Ark. at 181.
In sum, the Commission possesses "a wide discretion" in determining how wildlife shall be conserved and promulgating regulations to that end. The Commission's powers and authority are not unlimited. As stated by the Arkansas Supreme Court, the Commission must exercise its powers in a "reasonable and just manner. It cannot arbitrarily make rules and regulations in complete disregard of the property rights of others without some real basis, which has a direct relationship with the purpose to conserve the wild life resources of this state." Farris, supra,228 Ark. at 783. It must be clearly shown, however, that there has been an abuse of the Commission's broad discretionary powers before a court will conclude that those powers have been exceeded. Id. As stated by the court in Stanley, supra:
 [W]e must defer to the knowledge and interest of the Commission and would have to say that there was no reasonable basis for their decision before we could say that there was an abuse. . . . Evidence of abuse of this discretion should be so clear as to be virtually beyond argument before the courts should declare it so. The constitutional amendment left to the Commission the adoption of methods to reach the desired ends.
260 Ark. at 190.
Bearing these principles in mind, I conclude that the Commission's regulatory authority does extend to non-native, captive born animals, as long as the particular regulations are within the scope of the purposes enumerated in Amendment 35. In other words, in my opinion, the Commission is not precluded, ipso facto, from regulating particular animals simply because they are not native to Arkansas and are privately owned. To the contrary, it is my opinion that the Commission has ample authority to adopt and enforce a regulation aimed at privately owned, non-native animals, as long as the particular regulation reasonably tends to promote the protection and conservation of this State's wildlife resources, and is not discriminatory or violative of the United States Constitution.[2]Cf. Farris, supra (upholding a Commission regulation prohibiting the sale of game fish raised in private waters, concluding that the private ownership must yield to the regulatory purpose of the State's ownership of its wildlife resources).
It should perhaps be noted, finally, that the courts will not question the wisdom or the expediency of the Commission's actions. As stated by the Arkansas Supreme Court in Stanley, supra, "[t]he matter of reasonableness is not directed at the question of the wisdom of the action, which we take to be outside the scope of judicial review."260 Ark. at 178. The court stated further that "[t]here may well be a difference of opinion about the propriety of the particular procedure adopted to accomplish the basic purposes of Amendment 35, but it certainly cannot be said that there is no respectable authority supportive of the approach being taken." Id. at 189. The court pointed out in that case that ". . . there [was] no evidence that [the Commission's decision] was unreasoned or without steady judgment or purpose." Id.
In conclusion, the court will not substitute its judgment for that of the Commission, but rather will require a showing that the Commission's action was ultra vires or arbitrary or an abuse of its discretion before it will be concluded that the Commission has exceeded the limits of its powers. Id.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] The correspondence attached to your request refers to a new law or regulation that bans the ownership of any wild animal pets. While it is my understanding that the Commission may soon be promulgating regulations that address captive wildlife, I have not seen the proposal and cannot give any detailed consideration to a particular regulation at this point.
[2] The federal government, pursuant to its power to regulate interstate commerce (U.S. Const. art. I, § 8, cl. 3) regulates the transportation, purchase, sale, housing, care, handling, and treatment of animals under the Animal Welfare Act (7 U.S.C. §§ 2131-2157). As noted in the correspondence enclosed with your request, the U.S. Department of Agriculture (USDA) issues licenses under this Act to dealers and exhibitors of wild or exotic animals. See 7 U.S.C. § 2133 and USDA regulations. State or local regulation in this area could thus give rise to a challenge under the U.S. Constitution. At least one federal court has, however, rejected both a supremacy clause (U.S. Const. art. VI, cl. 2) and a commerce clause challenge to a local ordinance banning the possession of wild animals within town limits. DeHart v. Town of Austin,Ind., 39 F.3d 718 (7th Cir. 1994). The court's reasoning in this case is persuasive and compels me to conclude that such a challenge to a similar Commission regulation, properly promulgated under Ark. Const. Amend. 35, would likely fail.