[28]VAIDIK, Chief Judge,
dissenting.
' [29] This case involves high-fence hunting of white-tailed deer. This is also known as canned hunting — the shooting within high-fence enclosures of farm-raised deer that are bred for unnaturally massive antlers. The dangers of canned hunting include infection — specifically, chronic wasting disease (CWD) — and unethical hunting practices, such as the concept of fair chase. See Ryan Sabalow, Trophy Deer Industry Linked to Disease, Costs Taxpayers Millions, Indianapolis Star, Mar. 27, 2014, http://indy.st/lmxxhiY (discussing both CWD and shooting — for a $15,000 fee inside a one-acre pen — a deer so ill that a ranch hand had to poke the deer with a sharp stick to get it to stand).
[30] The majority says IDNR cannot regulate in any way high-fence hunting under current Indiana statutory law. The majority does not argue that deer are not wild animals.[3] Rather, the majority relies mainly on Indiana Code section 14-22-1-1, the opening section to the chapter that determines that wild animals are the property of the people of Indiana (with a few exceptions) and that IDNR’s job is to protect and manage resources:
(a) All wild animals, except those that are:
(1) legally owned or being held in cap- . tivity under a license or permit as required by this article; or
*230 (2) otherwise excepted in this article; are the property of the people of Indiana.
(b) The department shall protect and properly manage the fish and wildlife resources of Indiana.
The majority holds that Section 14-22-1-1 “does not confer authority on IDNR to protect and manage wild animals that are legally owned or being held in captivity under a license or permit.” Op. at 226. In other words, if a'wild animal is excepted under subsection (a), then IDNR cannot protect and manage it under subsection (b).[4] I disagree with the majority’s interpretation of Section 14-22-1-1 based on the plain language of the statute. See State v. Coats, 3 N.E.Sd 528, 531 (Ind. 2014) (“Where the statute’s language is unambiguous, we read each word in the ‘plain, ordinary, and usual sense.’ ”), cert, denied.
[31] Subsection (a) addresses ownership of wild animals. That is, all wild animals are the property of the people of Indiana, except those animals that are legally owned or being held in captivity under a license or permit in Article 22. But subsection (b) is independent of and broader than subsection (a). Subsection (b) addresses the protection and management of the fish and wildlife[5] resources of Indiana. IDNR’s responsibility to protect and properly manage the fish and wildlife resources is not conditioned on the owner of those resources. In other words, IDNR can protect and properly manage resources that are both publicly and privately owned.
[32] Even assuming that Section 14-22-1-1 is ambiguous, which I do not believe it is, looking at all the statutes in Article 22 leads me to the inevitable conclusion that the legislature intended to give IDNR regulatory power over all wild animals.[6] For example, Indiana Code section 14-22-2-3 outlines the general duties of the director, and provides that the director can regulate wild animals on both public and private property:
(1) Provide for the protection, reproduction, care, management, survival, and regulation of wild[-]animal populations regardless of whether the wild animals are -present on public or private property in Indiana.
(2) Organize and pursue a program of research and management of wild animals that will serve the best interests of the resources and the people of Indiana.
(Emphasis added); see also Ind.Code § 14-22-2-5 (“The director or the director’s representative may ... enter into or upon private or public property for the following purposes: (1) Managing and protecting a wild animal found upon or within the property. (2) Killing or removing a wild animal that is considered a nuisance or detrimental to overall populations.” (emphasis added)). In addition, Indiana Code section 14-22-2-6 provides that the director shall adopt rules that
(4) Establish the methods, means, and time of:
(A) taking, chasing, transporting, and selling; or
*231 (B) attempting to take, transport, or sell;
wild animals or exotic mammals, with or without dogs, in Indiana or in a designated part of Indiana.
[33] Other statutes in this article specifically grant IDNR the authority to regulate privately owned wild animals. According to the game-breeders statute, IDNR may issue a license to (1) propagate in captivity and (2) possess, buy, or sell game birds, game mammals, or forbearing mammals protected by Indiana law. Ind. Code § 14-22-20-1. The wild-animal-permit law establishes a permit process for non-zoo entities to possess wild animals. Ind.Code ch. 14-22-26. Finally, the shooting-preserves statute provides that a licensed person may propagate and offer for hunting the following animals that are captive-reared and released: pheasant, quail, chukar partridges, mallard ducks, other game-bird species that IDNR determines by rule, and species of exotic mammals that IDNR determines by rule. Ind.Code § 14-22-31-7.
[34] These varied examples show that the legislative scheme was to grant the State the authority to protect and manage animals both wild and domesticated, even those it does not own, and even when the animals are on private property.[7] Using this authority, I believe that IDNR can regulate canned hunting and specifically Whitetail Bluffs high-fence hunting operation.[8]
[35]Finally, I understand that a fairness argument can be made, but Whitetail Bluff has not made an estoppel argument here. See Brown v. Branch, 758 N.E.2d 48, 51-52 (Ind.2001) (“Estoppel is a judicial doctrine sounding in equity. Although variously defined, it is a concept by which one’s own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct.”). That is, Whitetail Bluff does not argue that IDNR is es-topped from regulating it because of a letter IDNR sent Whitetail Bluff in 1999. However, the letter, which came from a single person in IDNR’s law-enforcement division, plainly cautioned: (1) “At this time we can find nothing illegal or contrary to our hunting laws regarding your business proposal and plans as detailed in your letter” and (2) “be aware of the fact that state statutes and rules may change in the future that would disallow the type of business venture that you have described to us. Whether or not previously established businesses of this type would *232 be allowed to continue after the possible law change is unknown at this time.” Op. at 221 (emphases added). Because Whitetail Bluff has been operating for more than a decade on a letter from a single person in IDNR that cautioned IDNR’s position may change and Whitetail Bluff does not raise estoppel, I do not think that a fairness argument is persuasive.
[36] Because IDNR may protect and properly manage the fish and wildlife resources of Indiana — regardless of who owns them — I believe that IDNR has the authority to regulate high-fence hunting under our current statutory scheme. Therefore, I would enter summary judgment in favor of IDNR.

. Even if the majority argued that deer were not wild animals, the law provides otherwise. For purposes of Indiana Code article 14-22, “wild animal” means "an animal whose species usually lives in the wild or is not domesticated.” Ind.Code § 14-8-2-318(a), (b) (formatting altered). Because deer usually live in the wild and are not domesticated, they are wild animals. See also Appellants' App. p. 307, 483, 486-90, 497 (parties conceding deer are wild animals). In addition, if deer were not subject to the wildlife and hunting authority of IDNR, then Whitetail Bluff would be permitted to possess deer only under the statute for cervidae-livestock operations. See Ind.Code § 14-22-20.5-2. If considered livestock, then Whitetail Bluffs deer would be subject to humane-slaughter practices. See Ind.Code § 15-17-5-1. Rodney Bruce had a game-breeder’s license, but it expired on December 31, 2005.

.This is essentially what the trial court found: "The deer purchased by Whitetail Bluff and offspring thereof, are privately owned and are not the property of the people of the State of Indiana. Therefore the animals are not subject to regulation by DNR by virtue of the provisions of Indiana Code § 14-22-1-1.” Appellants'App. p. 509.

. For purposes of Indiana Code article 14-22, "wildlife” means "all wild birds and wild mammals.” Ind.Code § 14-8-2-320.

. In fact, Whitetail Bluff concedes that its hunters comply with other parts of Article 22, such as the time, licensing, and firearms used in its guided hunts. Appellants’ App. p. 21, 30, 480.

. I disagree with the Seventh Circuit’s decision in DeHart v. Town of Austin, Indiana, 39 F.3d 718 (7th Cir.1994). It is well established that we are not bound by the Seventh Circuit's interpretation of Indiana law. See Evan v. Poe & Assocs., 873 N.E.2d 92, 103 (Ind.Ct.App.2007). Moreover, the statute at issue in DeHart was an earlier version of Section 14-22-1-1, and that statute was organized differently than the statute is organized today. Compare Ind.Code § 14-22-1-1 with Ind. Code § 14-2-1-2 (1993). Finally, as explained above, I believe that our current statutory scheme allows IDNR to regulate high-fence hunting.

. It would make little sense that the State could not regulate wild animals privately owned when the State can regulate domesticated animals privately owned. That is, the State requires pet owners to have their dogs and cats vaccinated against rabies, 345 Ind. Admin. Code 1-5-2; requires swine and cattle that are transported into our state to be tested for brucellosis, 345 Ind. Admin. Code 3-4-2.5 & 345 Ind. Admin. Code 2-6-2.5; imposes specific duties on cattle owners when a program to control and eradicate brucellosis has begun in a county, Ind.Code § 15-17-8-9; requires cattle and goats who test positive for tuberculin to be condemned, Ind.Code § 15-17-7-6; requires cattle to be quarantined when brucellosis is detected, Ind.Code § 15-17-8-10; and prohibits the feeding of trash to swine, Ind.Code § 15-17-10-16.